UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| LENG THAO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPLORE INFORMATION SERVICES, LLC,<br><br>Defendant. | Case No. 0:24-cv-02695<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Leng Thao ("Plaintiff"), by and through his attorneys, on behalf of himself and the Classes set forth below, brings the following Class Action Complaint against Explore Information Services, LLC ("Explore" or "Defendant").

## INTRODUCTION

1. Recognizing that the content of consumer reports can have a significant impact on people's lives, Congress has chosen to regulate the procurement, use, and content of those reports through the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

2. Plaintiff seeks to hold Defendant accountable for its willful and systemic violations of the FCRA.

3. Defendant has willfully violated the FCRA by systematically reporting inaccurate information on consumers, by inaccurately reporting that they have been

1

convicted of crimes when they have not, and by reporting records more than once. This violates 15 U.S.C. § 1681e(b), which requires Explore to use reasonable procedures to ensure the maximum possible accuracy of its reporting.

4. Defendant has also willfully violated the FCRA by failing to undertake reasonable reinvestigations of consumer disputes of inaccurate information, in violation of 15 U.S.C. § 1681i.

## THE PARTIES

5. Plaintiff Leng Thao is an individual person and a resident of Little Canada, Minnesota.

6. Defendant Explore Information Services, LLC is headquartered in Eagan, Minnesota. Explore is a consumer reporting agency ("CRA") as defined by the FCRA.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allow claims under the FCRA to be brought in any appropriate court of competent jurisdiction. Jurisdiction is also appropriate under the Class Action Fairness Act, 28 U.S.C. § 1332(d), as the amount in controversy exceeds $5,000,000 and minimal diversity exists among Defendant and the members of the Classes.

8. This Court has personal jurisdiction over Defendant because it is headquartered in this District and has sufficient contacts with the jurisdiction. Further, this Court has specific jurisdiction because a substantial part of the events or omissions giving rise to the claims occurred in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## STATUTORY BACKGROUND

10. Enacted in 1970, the FCRA's passage was driven in substantial part by concerns that consumer reports were being used without adequate protections against the harms caused by widespread errors and inaccuracies.

11. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

12. The FCRA mandates that CRAs use reasonable procedures to ensure that their reports attain maximum possible accuracy. 15 U.S.C. § 1681e(b).

13. The FCRA also mandates that CRAs, when they receive consumer disputes, must conduct a reasonable reinvestigation to determine whether the disputed information was accurate. 15 U.S.C. § 1681i.

## FACTUAL ALLEGATIONS

14. In the spring of 2024, Plaintiff sought to increase his life insurance coverage, from $50,000 to $100,000, and he contacted his insurance company to apply for increased coverage.

15. To his surprise, Plaintiff received a letter on May 1, 2024, from non-party American National Insurance Company ("American National") informing him that he was

3

denied the increased coverage. (Ex. 1.) The letter indicated that "[t]he action taken on your application for insurance was affected in part or in whole from information obtained from the consumer reporting agency indicated below: Explore Information Services." *Id*.

16. Shortly thereafter, Plaintiff requested a copy of his file from Explore. On May 16, 2024, Plaintiff received a response to that request. (Ex. 2.)

17. Plaintiff was shocked to see that Explore's file indicated that, in conjunction with Plaintiff's insurance application, Explore had reported that Plaintiff had been convicted of felony assault in the second degree, misdemeanor domestic assault and two felony violations of a domestic abuse order for protection. *Id*.

18. None of these convictions belong to Plaintiff. Defendant's inclusion of them on his report was erroneous.

19. Plaintiff does have two DWIs (misdemeanors) and a public nuisance misdemeanor, which were also included on his report, but he has never been convicted of a felony or any type of domestic abuse charge. Plaintiff's actual record has never been a barrier to him obtaining insurance.

20. Defendant's reporting of the charges that actually belonged to him was also erroneous. For one of Plaintiff's misdemeanors, Defendant listed the same case twice:

| Traffic - 4TH DEGREE - DWI - Operate Motor Vehicle Under Influence of Alcohol | 06/02/2014 | D | MN District Courts | Conviction | Traffic | DUI | Convicted | Other |
| Traffic - DWI - Operate Motor Vehicle Under Influence of Alcohol | 06/02/2014 | D | MN Bureau of Criminal Apprehension, and Dept of Public Safety | Conviction | Traffic | DUI | Convicted | Other |

(Ex. 2.)

4

21. Plaintiff, appalled by the errors in Defendant's report, disputed his report results with Defendant.

22. In response, Defendant sent Plaintiff a letter dated June 18, 2023. (Ex. 3.) In that letter, Defendant refused to correct its errors, stating "MN DPS and BCA believe you use several aliases, and so all of these cases involve the same individual." *Id.*

23. This was wrong. Plaintiff does not use and has never used any aliases, nor does any law enforcement agency believe that he does.

24. In fact, even a cursory review of the records available online from the Minnesota courts makes clear that the felonies wrongly attributed to Plaintiff were in fact committed by an individual named Peng Thao, a name which is different than Plaintiff's, which is Leng Thao.

25. Further, the court records make clear that Peng Thao has a completely different birthdate than Plaintiff (different month, different date, and different year).

26. The court records also indicate that Peng Thao resides in Pearland, Texas. Plaintiff resides in Minnesota.

27. Defendant could and should have taken note of the differences in name, date of birth and city of residence between Plaintiff and Peng Thao, and avoided misattributing Peng Thao's convictions to Plaintiff.

28. Defendant's misreporting, duplicative reporting and failure to correct its reporting caused concrete harm to Plaintiff, including causing his insurance denial, harm to reputation, stress, and inconvenience and lost time resulting from his efforts to correct

5

his report. The false and derogatory information on Defendant's report was also read by Plaintiff's insurance company, which is a concrete harm in and of itself.

## DEFENDANT'S PROCEDURES VIOLATE THE FCRA

29. Defendant's flawed procedures have been recognized as such for years, including in agency guidance and in court opinions.

30. Like most if not all CRAs, Defendant uses automated and algorithmic procedures to assemble its consumer reports. However, Defendant uses automated procedures that erroneously match individuals to records that are not theirs, and which fail to properly de-duplicate records.

### *Over-Inclusive Matching*

31. For decades, courts have made clear that matching consumers to records without the use of sufficient matching criteria is a violation of the FCRA. *See, e.g.*, *Cortez v. TransUnion, LLC*, 617 F.3d 688 (3d Cir. 2010); *Smith v. LexisNexis Screening, Solutions, Inc.*, 837 F.3d 604 (6th Cir. 2016); *Ramirez v. TransUnion, LLC*, 951 F.3d 1008, 1031-33 (9th Cir. 2020), *rev'd on other grounds*, 141 S. Ct. 2190 (June 25, 2021).[1]

---

[1] *See also Price v. Trans Union, LLC*, 737 F. Supp. 2d 281 (E.D. Pa. 2010) (denying defendant's motion for summary judgment on section 1681e(b) claim based on name-only matching in mixed file situation); *Gomez v. Kroll Factual Data, Inc.*, 20 F. Supp. 3d 1103 (D. Colo. 2013) (denying motion to dismiss FCRA claim based on name-only matching); *Neclerio v. Trans Union, LLC*, 983 F. Supp. 2d 199 (D. Conn. 2013) (denying defendant's summary judgment motion on 1681e(b)claim based on name-only matching of consumer report for employment); *Taylor v. Screening Reports, Inc.*, 2013 U.S. Dist. LEXIS 135488 (N.D. Ga. July 16, 2013) (denying defendant's motion for summary judgment on section 1681e(b) claim based on name-only criminal record matching); *Lopez v. Nat'l Credit Reporting, Inc.*, 2013 WL 1999624 (N.D. Cal. May 13, 2013) (denying motion to dismiss in case alleging violation of section 1681e(b) related to mixed file due to match based only on name and similar area of residence); *Smith v. E-BackgroundChecks.com, Inc.*, 81 F.

32. The agency with authority to enforce the FCRA, the Consumer Financial Protection Bureau ("CFPB"), in 2021 issued an advisory opinion summarizing and explaining this already well-established principle. Fair Credit Reporting; Name-Only Matching Procedures, 86 FR 62468-01.

33. In that opinion, the CFPB plainly stated that:

a consumer reporting agency that uses inadequate matching procedures to match information to consumers, including name-only matching (i.e., matching information to the particular consumer who is the subject of a consumer report based solely on whether the consumer's first and last names are identical or similar to the names associated with the information), in preparing consumer reports is not using reasonable procedures to assure maximum possible accuracy under [15 USC § 1681e(b)].

*Id*.

34. The CFPB also made clear why this procedure was flawed:

Matching errors are particularly common when using name-only matching because many consumers have the same or similar names. For example, in the United States, the 2010 census (the most recent to have last name statistics available) found more than 2.4 million respondents with the last name of Smith, 1.9 million respondents with the last name of Johnson, 1.6 million respondents with the last name of Williams, and more than 1 million respondents each with the last name of Brown, Jones, Garcia, Miller, Davis,

---

Supp. 3d 1342 (N.D. Ga. 2014) (magistrate judge's recommendation to deny defendant's motion for summary judgment on section 1681e(b) claim based on name and date of birth criminal record matching); *Williams v. First Advantage LNS Screening Solutions, Inc.*, 238 F. Supp. 3d 1333 (N.D. Fla. 2017) (denying judgment as matter of law and upholding a jury verdict finding willful and negligent violations of section 1681e(b) based on name and date of birth criminal record matching); *Adan v. Insight Investigation, Inc*., 2018 U.S. Dist. LEXIS 8365, *28 (S.D. Cal. Jan. 18, 2018) (denying defendant's motion for summary judgment on claim of willful section 1681e(b) violation based on first and-last name and date-of-birth criminal record matching); *Fernandez v. RentGrow, Inc.*, 341 F.R.D. 174, 190 (D. Md. 2022) (denying defendant's motion for summary judgment and certifying class for FCRA claims based on name-only matching); *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 302 (N.D. Cal. 2015) (certifying class for FCRA claims based on name-only matching), *settlement approved*, 2017 U.S. Dist. LEXIS 177998 (N.D. Cal., Oct. 26, 2017) (approving $8 million settlement).

> Rodriguez, Martinez, or Hernandez. Given the commonality of many first and last names, it is not unlikely that thousands, or even tens of thousands, of consumers, might share a particular first and last name combination.
>
> The risk of mismatching from name-only matching is likely to be greater for Hispanic, Asian, and Black individuals because there is less last-name diversity in those populations than among the non-Hispanic white population.

*Id.* (footnotes omitted).

35. Defendant's conduct here is worse than that condemned by the courts and the CFPB. Rather than matching individuals to records based on first and last name alone, Defendant appears to have used automated procedures to match Plaintiff to a criminal record that was not his based on a first and last name comparison to a criminal's *alias*, rather than the criminal's actual name. Comparing a consumer's name against not only the names of known criminals, but also all known aliases, creates more points of comparison, and without the use of other confirming matching criteria, more opportunities for false positives, as occurred here.

36. Defendant's conduct is also illogical – there is no reason to think that Plaintiff – or anyone else – would attempt to use an alias to purchase legitimate insurance.

### *Duplicative Reporting*

37. Similarly, it has long been established by the courts that duplicative reporting of derogatory information violates the FCRA. *See, e.g.*, *Smith v. HireRight Sols., Inc.*, 711 F. Supp. 2d 426, 437 (E.D. Pa. 2010) (plaintiff stated a claim for violation of §1681e(b) where CRA reported same criminal record more than once); *Hawkins v. S2Verify LLC*, No. 15-03502, 2016 WL 107197 (N.D. Cal. Jan. 11, 2016) ("it is plausible that the inclusion of

8

the same criminal activity multiple times in a report could be misleading in a way that adversely affected IPC's decision regarding plaintiff's employment."); *Dougherty v. Quicksius, LLC*, No. 15-6432, 2016 WL 3757056, at *5 (E.D. Pa. July 14, 2016) ("the repetition of the same offenses multiple times may constitute an inaccuracy"); *Haley v. TalentWise, Inc.*, 9 F. Supp. 3d 1188, 1193 (W.D. Wash. 2014); *Abrogina v. Kentech Consulting, Inc.*, No. 16-0662, 2023 WL 6851988, at *4 (S.D. Cal. Oct. 17, 2023) (denying defendant's motion for summary judgment, holding "[t]hat the one conviction was listed twice also raises a genuine issue about the accuracy of the report."); *Kohut v. Trans Union LLC*, No. 04-2854, 2004 WL 1882239, at *3 (N.D. Ill. Aug. 11, 2004) (plaintiff alleged inaccuracy where a single debt, albeit accurate, was improperly reported on a credit report numerous times).

38. The CFPB has also recently issued an advisory opinion summarizing and explaining this already well-established principle in a January 2024 advisory opinion:

> a consumer reporting agency that reports public record information is not using reasonable procedures to assure maximum possible accuracy … if it does not have procedures in place that [] prevent reporting information that is duplicative.

Fair Credit Reporting; Background Screening, 89 FR 4171-01.

39. The CFPB elaborated:

To comply with [15 U.S.C. § 1681e(b)], consumer reporting agencies must have reasonable procedures in place to prevent duplicative information from being reported on consumer reports in order to ensure that reports do not inaccurately suggest that a single event occurred more than once. For example, inclusion of multiple entries for the same criminal conviction or the same eviction can wrongly suggest that a consumer was convicted or evicted more than once. Consumer reporting agencies that obtain information from multiple sources, or from a single source that in turn collects information

9

from multiple sources, must take particular care to identify information that is duplicative to ensure that information is accurately presented in consumer reports. Similarly, when a consumer reporting agency reports multiple stages of the same court proceeding, it must have procedures in place to ensure that information regarding the stages of these court proceedings (such as an arrest followed by a conviction) is presented in a way that makes clear the stages all relate to the same proceeding or case and does not inaccurately suggest that multiple proceedings or cases have occurred. For example, at a minimum, such procedures should require that all information about one court case should be collated and presented together in manner that makes it clear it is a single case.

*Id*.

40. Here, Defendant collects information from multiple sources, including courts and law enforcement agencies, and its automated procedures fail to properly deduplicate or collate and present together records in a manner that makes clear that they are a single case.

*Unreasonable Dispute Reinvestigation*

41. When, as here, a CRA misattributes criminal records to a consumer, is told by that consumer of the misattribution, but fails to correct the misattribution, the CRA has violated its duty under 15 U.S.C. § 1681i to conduct a reasonable reinvestigation. *Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095, 1103 (N.D. Cal. 2016).

42. Under 15 U.S.C. § 1681i, a CRA has a duty to "conduct a *reasonable* reinvestigation. In doing so, [the CRA bears] a grave responsibility under FCRA to ensure the accuracy of the information contained in its report." *Martin v. First Advantage Background Servs. Corp.*, 877 F. Supp. 2d 754, 762 (D. Minn. 2012) (citations and quotations omitted; emphasis original).

43. Defendant failed to live up to this grave obligation when it failed to correct Plaintiff's report.

## CLASS ALLEGATIONS

44. Plaintiff asserts Count I on behalf of the Mismatch Class defined below:

> All natural persons upon whom Defendant produced a report from the two years prior to filing of this Complaint until the date the class list is assembled, where the report contained criminal records belonging to an individual with a different name and date of birth than the individual who was the subject of the report.

45. Plaintiff also asserts Count I on behalf of the Duplicative Reporting Class defined below:

> All natural persons upon whom Defendant produced a report from the two years prior to filing of this Complaint until the date the class list is assembled where the report contained the same criminal record more than once.

46. Plaintiff asserts Count II on behalf of the Disputes Class defined below:

> All members of the Mismatch Class or Duplicative Reporting class who contacted Defendant to dispute the contents of their reports, and whose reports were not corrected.

47. Plaintiff may revise the proposed class definitions based on discovery or other case developments.

48. <u>Numerosity</u>: The Classes are so numerous that joinder of all class members is impracticable. Defendant produces reports nationwide, and has produced thousands of reports on consumers during the class period. Defendant uses automated procedures to match consumers to criminal records, meaning that Defendant deploys computer algorithms containing matching criteria that cause Defendant to report a "match" any time a consumer's name matches a criminal's alias. Those same automated algorithms cause

11

Defendant to report multiple instances of the same conviction because Defendant has failed to implement deduplication. For that reason, the number of class members will greatly exceed a number of people whose claims can be practically joined in a single action.

49. <u>Typicality</u>: Plaintiff's claims are typical of the class members' claims. Defendant treated Plaintiff in the same manner as other class members.

50. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation.

51. <u>Commonality</u>: Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes. These common questions include:

    a. Whether Defendant violated the FCRA;

    b. Whether Defendant's violations were willful;

    c. Whether Defendant is a CRA and subject to the requirements of the FCRA;

    d. The proper measure of statutory and punitive damages; and

    e. The proper form of declaratory relief.

52. Certification of the Classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate because:

    a. As alleged above, the questions of law or fact that are common to the members of the Classes predominate over any questions that may affect any individual class member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues that may exist. The statutory and

12

punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct.

b.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment in this respect, as they involve many consumers who are unable to afford and bring such claims individually. Further, most consumers affected by Defendant's conduct are likely unaware of their rights under the law. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class-wide and should be resolved at one time.

## COUNT I
## 15 U.S.C. § 1681e(b)
### *Failure to Follow Reasonable Procedures*
### *On Behalf of Plaintiff, the Mismatch Class, and the Duplicative Reporting Class*

53.  Plaintiff incorporates the paragraphs above.

54.  Defendant failed to comply with 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and the members of the Mismatch and Duplicative Reporting Classes.

55.  Defendant reported criminal convictions as belonging to Plaintiff in the face of contradictory information, including a mismatch on name, address and date of birth.

56. Defendant's automated procedures to match individuals to criminal records is overinclusive, reporting matches where none exist, causing predictable and preventable harm to Plaintiff and Mismatch Class members.

57. Defendant reported one criminal conviction belonging to Plaintiff twice.

58. Defendant plainly has inadequate automated procedures to deduplicate records coming from disparate sources, leading inevitably to duplicative reporting, causing predictable and preventable harm to Plaintiff and Duplicative Reporting Class members.

59. As a result of Defendant's misconduct, Plaintiff, the Mismatch Class, and Duplicative Reporting Class, suffered concrete harm including but not limited to higher insurance rates, damages to their reputations, and increased risk of insurance denial.

60. The foregoing violations were negligent.

61. The foregoing violations were willful.

62. At all times pertinent hereto, Defendant's conduct was a result of its deliberate, standardized and automated policies and practices, was willful, was intentionally accomplished through intended procedures, and was carried out in reckless disregard of consumers' rights as set forth in section 1681e(b) of the FCRA.

63. Pursuant to 15 U.S.C. §§ 1681n and o, Defendant is liable to Plaintiff and the members of the Mismatch and Duplicative Reporting Classes for its failure to comply with FCRA § 1681e(b), in an amount equal to the sum of (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

## COUNT II
## 15 U.S.C. § 1681i
### *Failure to Conduct a Reasonable Investigation*
### *On Behalf of Plaintiff and the Disputes Class*

64. Plaintiff incorporates by reference all preceding paragraphs as alleged above.

65. Defendant violated 15 U.S.C. § 1681i by failing to "conduct a reasonable reinvestigation to determine whether the disputed information [was] accurate."

66. Defendant's reinvestigation was not reasonable because it continued to attribute crimes to Plaintiff that he did not commit, despite Plaintiff informing Defendant of that fact and despite the fact that the person who was convicted of the crimes had a different name, date of birth, and address from Plaintiff.

67. As a result of Defendant's misconduct, Plaintiff and the Disputes Class members suffered concrete harm including but not limited to higher insurance rates, damages to their reputations, increased risk of insurance denial, and lost time investigating and disputing inaccuracies.

68. At all times pertinent hereto, Defendant's conduct was a result of its deliberate policies and practices, was willful, was intentionally accomplished through intended procedures, and was carried out in reckless disregard of consumers' rights as set forth in section 1681i of the FCRA.

69. Pursuant to 15 U.S.C. §§ 1681n and o, Defendant is liable to Plaintiff and the Dispute Class members for its failure to comply with 15 U.S.C. § 1681i, in an amount equal to the sum of (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4)

attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Classes, prays for relief as follows:

a) Determining that this action may proceed as a class action under Fed. R. Civ. P. 23(b)(3);
b) Designating Plaintiff as the representative for the Classes;
c) Designating Plaintiff's Counsel as counsel for the Classes;
d) Issuing notice to the Classes at Defendant's expense;
e) Declaring that Defendant committed multiple, separate violations of the FCRA;
f) Declaring that Defendant acted willfully and in deliberate or reckless disregard of the rights of Plaintiff and the Classes under the FCRA;
g) Awarding statutory damages as provided by the FCRA;
h) Awarding punitive damages as provided by the FCRA;
i) Awarding reasonable attorneys' fees and costs and expenses, as provided by the FCRA; and
j) Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff and the Classes demand a trial by jury.

BERGER MONTAGUE PC

Dated: July 12, 2024

/s/Joseph C. Hashmall
E. Michelle Drake, Bar No. 0387366
Joseph C. Hashmall, Bar No. 0392610
1229 Tyler St NE, Suite 205

16

Minneapolis MN 55413
Telephone: 612.594.5999
Facsimile: 612.584.4470
Email: emdrake@bm.net
          jhashmall@bm.net

*Counsel for Plaintiff*